**Entered on Docket**
**February 09, 2005**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**Signed: February 07, 2005**

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA


In re                                              No. 04-46443 T
                                                   Chapter 11
FRED AND LINDA KOELLING,

              Debtor.
_____/

BURLINGAME CAPITAL PARTNERS
II, L.P. and ELECTROCHEM
FUNDING, LLC,                                      A.P. No. 04-4365 AT


              Plaintiff,

     vs.

FRED KOELLING, etc.; LINDA
KOELLING, etc. et al.,

              Defendants.
_____/

QMECT, INC., etc., FRED
KOELLING, etc., and LINDA
KOELLING, etc.,                                    A.P. 04-4366 AT

              Plaintiff,

     vs.

ROBERT D. JUDSON, JR., etc.,
et al.,
_____/

The Court has taken under submission the question of whether certain of the claims asserted in the above-captioned adversary proceedings are core or noncore within the meaning of 28 U.S.C. § 157(b)(2) and whether there is a right to a jury trial with respect to those claims. Both actions were originally filed in state court and were removed here by Fred and Linda Koelling (the "Koellings"), the above-captioned debtors. The parties and claims in the two adversary proceedings and their procedural history are summarized below.

**Adversary Proceeding No. 04-4366 ("Action A").**

Action A was filed on October 23, 2002 in San Mateo County Superior Court. Plaintiffs are Qmect, Inc. ("Qmect"), a debtor in a related chapter 11 case, and the Koellings.[1] Defendants are Robert and Janice Judson (the "Judsons"), Sierra Financial Group, Inc. ("Sierra"), Burlingame Capital Partners II, L.P. ("Burlingame LP"), Burlingame Capital LLC, etc. ("Burlingame LLC"), and Burlingame Capital Management, LLC ("Burlingame") (collectively "Burlingame").

The claims asserted in the first amended complaint ("Complaint A") are for breach of fiduciary duty, rescission of contract, unfair business practice, breach of contract, declaratory relief, and injunctive relief. Complaint A alleges that, in or about 1999, at the recommendation of Comerica Bank of California

---

[1]The Koellings are the principal shareholders of Qmect.

2

("Comerica"), plaintiffs retained Burlingame to renegotiate or refinance Qmect's loans with Comerica. Instead, after making a half-hearted attempt to find a new lender, Burlingame set up a company to provide a loan to Qmect itself. Complaint A alleges that Burlingame's strategy forced Qmect to agree to a loan on unreasonable terms.

A first amended cross-complaint ("Cross-complaint A") was filed in September 2003 by Sierra, the Judsons, and two Burlingame entities (Burlingame LP and Burlingame LLC) against Qmect, the Koellings, Robert McNeil ("McNeil"), Kids Connection, Inc. ("Kids"), Alternative Capital Strategies ("Alternative"), and Edward O. Mehrfar ("Mehrfar"). The claims asserted in Cross-complaint A are for breach of unconditional guaranty, fraudulent transfers, contractual/implied indemnity and contribution, default/foreclosure under the warrant to purchase stock agreement, default/foreclosure under the stock pledge agreement, appointment of a receiver, accounting and return, waste of corporate assets, constructive trust, tortious interference with contractual relations, declaratory relief, and temporary restraining order. The allegations of Cross-complaint A cover the same time frame and events set forth in Complaint A. However, naturally, they provide a different version of the story, placing Burlingame in a more favorable and Qmect and the Koellings in a less favorable light.[2]

---

[2]In an oral ruling, the Court previously denied Burlingame's motion to dismiss the Koelling case as having been filed in bad faith. Burlingame has requested written findings of fact and conclusions of law. The Court will issue a separate

3

Case: 04-04365   Doc# 14   Filed: 02/07/05   Entered: 02/09/05 16:04:34   Page 3 of 16

**Adversary Proceeding No. 04-4365 ("Action B").**

Action B was filed on February 18, 2004 in San Mateo County Superior Court. Plaintiffs are Burlingame and Electrochem Funding, LLC ("Electrochem"). Defendants are the Koellings. The first amended complaint ("Complaint B") asserts claims for breach of an unconditional guaranty and for declaratory relief. The first claim for relief alleges that Qmect obtained loans from Comerica in 1998, that the Koellings executed unconditional guaranties with respect to the loans, that, in February 2004, Burlingame acquired the loans from Comerica, and that, shortly thereafter, Burlingame assigned the loqns to Electrochem. Complaint B further alleges that Qmect is in default on its obligations on the acquired loans and that the Koellings have failed to honor their guaranty obligation to cure the default.

The second claim for relief alleges that, after Complaint A and Cross-complaint A were filed, in or about June 2003, Burlingame, Qmect, the Koellings, and Structured Capital Group, Inc. ("Structured") entered into an agreement (the "June 2003 agreement") relating to Burlingame's purchase of the Comerica loans. It alleges that the agreement gave Burlingame the right to appoint a Chief Executive Officer ("CEO") for Qmect, to serve until such time as Qmect's debt to Burlingame was paid. It alleges that, notwithstanding this agreement, Qmect and the

memorandum of decision explaining the basis for the dismissal.

4

Case: 04-04365   Doc# 14   Filed: 02/07/05   Entered: 02/09/05 16:04:34   Page 4 of 16

Koellings have refused to allow the individual selected by Burlingame to assume the CEO position.

A first amended cross-complaint ("Cross-complaint B") was filed in October 2004 by the Koellings against Burlingame LP, Electrochem, and the Judsons for breach of contract, fraud, intentional interference with prospective economic advantage, and declaratory relief. Cross-complaint B alleges that the June 2003 agreement gave Burlingame 90 days to attempt to purchase the Comerica loans and that thereafter Structured would have the right to purchase them. It provided that, if Burlingame purchased the loans, the Koellings would be released from their guaranties. Cross-complaint B alleges that Burlingame failed to submit an offer to purchase the loans acceptable to Comerica during the 90 day period. Instead, in February 2004, after Structured and Comerica had reached a final agreement regarding the purchase on terms favorable to Qmect, Burlingame contacted Comerica and caused it to renege on the agreement with Structured and to sell the loan to Burlingame. Cross-complaint B alleges that Burlingame's purpose in acquiring the loans in this fashion was to pressure and harm Qmect.

**DISCUSSION**

The Court has previously indicated that it will remand to the state court any claims that are noncore or as to which a party has a right to a jury trial. It will retain any core proceedings as

5

to which there is no right to a jury trial.[3]  Thus, the Court must determine which of the claims fall into this category.  There does not appear to be any dispute that any claims asserted against Qmect or the Koellings by parties that file proofs of claim in their bankruptcy cases are core proceedings as to which there is no right to a jury trial.  Conversely, there does not appear to be any dispute that any claims asserted by Qmect or the Koellings against parties who do not file proofs of claim in their bankruptcy cases are noncore proceedings.[4]  The only dispute concerns: (1) whether claims asserted by Qmect or the Koellings against parties who do file proofs of claim are core proceedings and (2) if so, whether there is a right to a jury trial with

_____

[3]Qmect has asked that the retained claims in the adversary proceedings be consolidated with an adversary proceeding filed in the Qmect case, seeking equitable subordination of Burlingame's and Electrochem's claims: i.e., Adversary Proceeding No. 04-4190 ("Action C").  The Court is inclined to grant this motion.  Burlingame and the Judsons continue to contend that all claims should be remanded to state court as a matter of judicial economy and convenience of the parties.  The Court is not persuaded.  The cost of a jury trial in state court would be certain to exceed the cost of trying the core claims in this court.  Moreover, it would subject the debtor to litigation in multiple forums given the need to try Action C in this court. By contrast, Qmect and the Koellings have indicated that they will dismiss any claims against individuals or entities other than Burlingame and Electrochem so that, if the Court retains the core, nonjury claims, Qmect and the Koellings would not be required to litigate in two forums.

[4]Some of these claims may be equitable in nature so that there would be no right to a jury trial.  However, even if they were, if they were noncore, the Court would not retain jurisdiction over them.

6

respect to any such claims. Each of these issues is discussed below.

## A. CORE/NONCORE STATUS OF CLAIMS

Burlingame and Electrochem have filed proofs of claim in the Qmect case. The bar date for filing claims has not yet run in the Koellings case, and Burlingame and Electrochem have not yet filed proofs of claim there. However, they have indicated that, most likely, they will do so. The Court's analysis assumes that they will file proofs of claim, recognizing that its conclusion will only be relevant if proofs of claim are actually filed.

Section 157(b)(2)(C) of Title 28 of the United States Code describes as a core proceeding "counterclaims by the estate against persons filing claims against the estate[.]" The normal sequence of events that gives rise to such a proceeding is that a creditor files a proof of claim in a bankruptcy case and the representative of the bankruptcy estate files an objection to the claim and a counterclaim. Under those circumstances, there is little doubt that the counterclaim would qualify as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C).

Burlingame contends that a different analysis is required when the claim by the estate against the party who filed the proof of claim was asserted before the proof of claim was filed. Under these circumstances, Burlingame contends, filing the proof of claim is a defensive act and does not constitute submission to the bankruptcy court's summary jurisdiction. Its argument is

7

ostensibly supported to some extent by <u>In re Castlerock Properties</u>, 781 F.2d 159 (9th Cir. 1986).

In <u>Castlerock</u>, a state court action was pending against the debtor before the debtor's chapter 11 petition was filed. The creditor sought relief from the automatic stay. The debtor filed an opposition to the request for relief and asserted a counterclaim based on state law. The creditor objected to the counterclaim being heard as part of the request for relief from the automatic stay. The bankruptcy court overruled its objections. As a result, the creditor responded to the counterclaim and later filed a proof of claim. The bankruptcy court refused the creditor's request that its own counterclaim be tried as part of the same proceeding. After trial, the bankruptcy court ruled for the debtor. The district court reversed.

Affirming the district court, the Ninth Circuit Court of Appeals stated that:

> ...it seems unfair under the facts of this case to categorize the counterclaims as falling within...[28 U.S.C. § 157(b)(2)(C)]. The counterclaims were asserted before the Proof of Claim was filed....[The creditor] would not have filed the Proof of Claim if the bankruptcy court had declined jurisdiction over the counterclaims.

<u>Castlerock</u>, 781 F.2d at 161-62. The debtor contended that the creditor had consented to the bankruptcy court's jurisdiction over the counterclaims by filing a proof of claim. The Court of Appeals stated that, normally, this would be the case. However, it noted that the debtor had:

8

> ...[cited] no case in which the filing of the proof of claim followed the bankruptcy court's assertion of jurisdiction over the counterclaims despite objections from the creditor. The purpose of the rule, to prevent a bankruptcy trustee from having 'to split a cause of action by defending against the claim in the summary proceeding and then seeking relief in a plenary suit,' [citation omitted] is not served by forcing the creditor to file a proof of claim as a defensive maneuver, thereby conferring jurisdiction on the bankruptcy court."

Castlerock, 781 F.2d at 162-63.

If the relevant authority were limited to Castlerock, the Court would be likely to find Qmect's and the Koellings' claims against Burlingame and Electrochem noncore proceedings and to remand them to state court. However, as noted by Qmect and the Koellings, subsequent case authority has undercut or dramatically limited Castlerock's precedential value. Subsequent to the Castlerock decision, the Ninth Circuit Court of Appeals revisited this subject matter in In re Conejo Enterprises, Inc., 71 F.3d 1460 (9th Cir. 1995).

In Conejo, a breach of contract action had been filed against the debtor in state court a year before the debtor filed its chapter 11 petition. When the debtor removed the state court action to bankruptcy court, the creditor asked the bankruptcy court to abstain from hearing the matter and to grant relief from the automatic stay. When the court declined to do so, the creditor appealed. By the time the district court heard the appeal, the creditor had filed a proof of claim, the deadline for filing claims having been due to expire. The district court

9

Case: 04-04365   Doc# 14   Filed: 02/07/05   Entered: 02/09/05 16:04:34   Page 9 of 16

reversed. It held that the claims asserted in the state court action were noncore, that the bankruptcy court was required to abstain from hearing them and was required to remand them to state court.

The sole issue on appeal to the Ninth Circuit was whether the claims asserted in the removed state court action were core or noncore. In determining that they were core, the Conejo court relied primarily on the Supreme Court's decision in Langenkamp v. Culp, 498 U.S. 42 (1990). In Langemkamp, the issue was whether creditors who filed proofs of claim had a right to a jury trial in preference actions asserted against them by a trustee. The Supreme Court held that they did not. It stated that, by filing proofs of claim, the creditors had "triggered 'the process of 'allowance and disallowance of claims,' thereby subjecting [themselves] to the bankruptcy court's equitable power.' [Citation omitted.]" Conejo, 71 F.3d at 1465.

The district court had distinguished Langenkamp on the ground that preference actions are core proceedings. See 28 U.S.C. § 157(b)(2)(F). The Conejo court found this to be an improper basis for distinction. See Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 55-64 (1989)(jury trial right cannot be eliminated by labeling proceeding core). The Conejo court stated that the:

> ...crucial factor triggering the allowance process in Langenkamp was not that the trustee sought to avoid preferences, but that the creditors filed proofs of claim. We hold that under the rule in Langenkamp, when a creditor files a proof of claim and triggers the allowance and disallowance process, it

10

necessarily triggers the bankruptcy court's core jurisdiction.

Conejo, 71 F.3d at 1465. It observed that "whether a creditor asserts its state action pre-petition or post-petition is not relevant for purpose of determining whether a proceeding is a core or non-core proceeding." Conejo, 71 F.3d at 1465, citing In re Meyertech Corp., 831 F.2d 410, 417-18 (3rd Cir. 1987).[5]

Finally, the Conejo court concluded that its decision was not precluded by Castlerock. It stated that:

> The rule in In re Castlerock, that a plaintiff does not consent to bankruptcy jurisdiction by filing a proof of claim, is limited to the unique facts of that case. The purpose behind the rule in In re Castlerock is to prevent the splitting of a cause of action. Otherwise, a trustee would be required to resolve a plaintiff's stayed claims in a plenary action while pursuing the debtor's counterclaims in bankruptcy....The rule that a proof of claim does not constitute consent to the bankruptcy court's jurisdiction does not apply to garden variety cases...in which a creditor brings a state action and then files a proof of claim seeking allowance of that claim. Furthermore, we rendered out decision in In re Castlerock prior to the Supreme Court's decision in Langenkamp, which holds that filing a proof of claim triggers the core proceeding of allowance or disallowance. The Court's decision in Langenkamp precludes simplifying our decision in In re Castlerock to a broad rule that a creditor never consents to bankruptcy core jurisdiction by filing a proof of claim.

Conejo, 71 F.3d at 1467.

---

[5]The Conejo court also viewed as irrelevant that, at the time the bankruptcy court made its decision, the creditor had not yet filed its proof of claim. It noted that, by the time the district court heard the appeal, a proof of claim had been filed. Conejo, 71 F.3d at 1466.

11

Based on <u>Conejo</u> and <u>Langenkamp</u>, the Court concludes that the law in the Ninth Circuit is that, if a proof of claim is filed against a bankruptcy estate, any related claims asserted by the bankruptcy estate against the creditor are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(C) regardless of whether they were asserted in state court before the proof of claim was filed.[6]

## B. JURY TRIAL RIGHT

The decision that Qmect's and the Koellings' claims against Burlingame and Electrochem are core proceedings does not end the analysis. As noted above, a party may have a right to a jury trial in a core proceeding. <u>See</u> <u>Granfinanciera S.A. v. Nordberg</u>, 492 U.S. at 55-64. The Court cannot conduct a jury trial in a core proceeding without the consent of the parties. Fed. R. Bankr. Proc. 9015(b). Burlingame and Electrochem would clearly not consent. Since the claims asserted against them are based on state law, there is no apparent reason why these claims should be referred to the federal district court rather than remanded to state court.

---

[6]Burlingame and Electrochem contend that the claims asserted against them in Complaint A and Cross-Complaint B are not related to their proofs of claim. This contention takes an overly narrow view of what it means to be related. Obviously, it is premature to make a final determination of this issue as to the Koellings' claims against these entities, since no proofs of claim in their case have yet been filed. However, assuming the proofs of claim cover the same territory as the state court pleadings, the Court would find the Koellings' claims against them to be related to their proofs of claim.

12

The preeminent case on the right to a jury trial in a core proceeding is <u>Granfinanciera</u>. <u>Granfinanciera</u> involved a fraudulent transfer action against an entity who had not filed a proof of claim in the bankruptcy case. The <u>Granfinanciera</u> court concluded that, to determine whether a litigant has a right to a jury trial in a bankruptcy court proceeding, the court must engage in a three part analysis. First, the court must determine whether there would have been a right to a jury trial in an action of this sort in 18th century England. Second, the court must determine whether the remedy sought is legal or equitable. Third, the court must determine whether the action involves a private right or a public right. Based on this analysis, the <u>Granfinciera</u> court concluded that the defendant had a right to a jury trial. <u>Granfinanciera</u>, 492 U.S. at 42-64. It distinguished an earlier case, <u>Katchen v. Landry</u>, 382 U.S. 323 (1966) on the ground that, in that case, the defendant had filed a proof of claim. <u>Granfinanciera</u>, 492 U.S. at 57-61.

The Supreme Court reiterated its view of the significance of whether a proof of claim has been filed in determining the right to a jury trial a few years ago in <u>Langenkamp v. Culp</u>, 498 U.S. 42 (1990). In <u>Langemkamp</u>, the issue was whether a party who had filed a proof of claim had a right to a jury trial as a defendant in a preference action. The <u>Langenkamp</u> court answered the question in the negative as follows:

> If the creditor [who files a proof of claim] is met, in turn, with a preference action from the trustee, that action becomes part of the

13

> claims-allowance process which is triable only in equity....In other words, the creditor's claim and the ensuring preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction.

Langenkamp, 498 U.S. at 44-45. Moreover, in subsequent decisions, courts have not viewed the application of this principle as limited to preference and fraudulent transfer actions. See, e.g., Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242, 1252-53 (3rd Cir. 1994)(chapter 11 debtors did not have a right to a jury trial in legal malpractice action that mirrored objection to bankruptcy counsel's fee application, claim having been converted from a legal one into an equitable one).

Based on the foregoing, the Court concludes that Burlingame and Electrochem have no right to a jury trial with respect to Qmect's claims against them as set forth in Actions A and B. The same conclusion applies to the Koellings' claims against them assuming they file proofs of claim in the Koelling case.

## CONCLUSION

For the reasons stated above, the Court concludes that the claims asserted by Qmect against Burlingame and Electrochem in Actions A and B are core proceedings as to which there is no right to a jury trial. Consequently, it declines to remand them and is inclined to consolidate them with Action C. The same conclusion applies to the Koellings' claims against Burlingame and Electrochem assuming they file proofs of claim in the Koellings bankruptcy case.

14

The parties are ordered to meet and confer to prepare a form of order directing which claims are to be retained and which are to be remanded in accordance with this decision.

END OF DOCUMENT

15

COURT SERVICE LIST

Eric A. Nyberg
Kornfield, Paul & Nyberg, P.C.
1999 Harrison St., Ste. 2675
Oakland, CA 94612

Mark Martel
425 Sherman Ave., #330
Palo Alto, CA 94306

Robert R. Moore
Allen, Matkins, Leck, Gamble & Mallory LLP
San Francisco, CA 94104

Adam Siegler
Siegler Kuber & Sexton LLP
9454 Wilshire Blvd., Ste. 201
Beverly Hills, CA 90212

Paul E. Manasian
Manasian & Rougeau, LLP
400 Montgomery St., Ste. 1000
San Francisco, CA 94104

Tobias Keller
Pachulski Stang Ziehl Young Jones Weintraub
Three Embarcadero Center, Ste. 1020
San Francisco, CA 94111-4023

Phillip Nicholson
221 Main St., Ste. 740
San Francisco, CA 94105

16